993 F.2d 1535
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
BANNER FIBREBOARD COMPANY, Plaintiff-Appellee,
v.
CLINTON PAPER COMPANY, Defendant-Appellant.
BANNER FIBREBOARD COMPANY, Plaintiff-Appellee,
v.
CLINTON PAPER COMPANY, Defendant-Appellant.
 Nos. 92-1435, 92-1726.
 United States Court of Appeals,
Fourth Circuit.
 Argued: March 4, 1993
Decided: May 13, 1993
 
 Appeals from the United States District Court for the Northern District of West Virginia, at Wheeling. Frederick P. Stamp, Jr., District Judge. (CA-90-10-W-S)
 Argued: Michael Joseph O'Neill, Clinton Paper Company, Boston, Massachusetts, for Appellant.
 J. Greg Goodykoontz, Steptoe & Johnson, Clarksburg, West Virginia, for Appellee.
 On Brief: Paul J. Leikhim, Clinton Paper Company, Boston, Massachusetts; William D. Wilmoth, Schrader, Byrd, Byrum & Companion, Wheeling, West Virginia, for Appellant.
 Sherri S. Reed, Steptoe & Johnson, Clarksburg, West Virginia, for Appellee.
 N.D.W.Va.
 AFFIRMED.
 Before PHILLIPS and NIEMEYER, Circuit Judges, and RESTANI, Judge, United States Court of International Trade, sitting by designation.
 PER CURIAM:
 
 
 1
 Banner Fibreboard Company, a West Virginia corporation engaged in the manufacture of paper stock, agreed to supply Clinton Paper Company with file folder stock to enable Clinton Paper to be a supplier of file folders to the United States General Services Administration (GSA). In March 1988 Banner Fibreboard sent Clinton Paper a telegram that provided the general terms under which Banner Fibreboard would sell the file folder stock. The telegraphic letter, which is central to the disposition of this case, read:
 
 
 2
 OUR COMPANY WILL SUPPLY YOUR UNBLEACHED NATURAL FILE FOLDER STOCK FROM APRIL 1 1988 TO JUNE 31 1989 TO SERVE GSA NEED, QUALITY TO ANSWER FEDERAL GOVERNMENT SPEC UUF-1206A AS MUCH AS 1600 TONS (133.3 TONS PER MONTH, 6 TRUCKLOADS) AT PRICE OF $590 PER TON DELIVERED YOUR PLANT
 
 
 3
 The parties agree that Clinton Paper was not obligated, by any arrangement reached, to purchase all of its needs for file folder stock from Banner Fibreboard.
 
 
 4
 Between April and September 1988, Clinton Paper placed about 68 specific orders for paper stock meeting GSA specifications. Some of the shipments failed to meet specifications and some of the file folder stock was defective. On September 7, 1988, Clinton Paper informed Banner Fibreboard that Clinton Paper would no longer pay for any shipments because of the nonconformities, and approximately two months later, on November 11, 1988, Banner Fibreboard stated that it was not able to meet the required specifications because it made the file folder stock from recycled paper, making the manufacturing process inconsistent. No further orders were placed and no further shipments were made. Because of the problems with the paper stock it received, Clinton Paper claims it lost its bid for a GSA supply contract in December 1988, although it later won an award of another contract from GSA.
 
 
 5
 Banner Fibreboard brought suit for $90,647 plus interest to collect payment for the shipments made, and Clinton Paper filed a counterclaim for breach of warranty and breach of contract, contending that Banner Fibreboard shipped defective goods and breached an obligation to ship further orders at the agreed upon prices. Clinton Paper sought damages in its counterclaim not only for costs and losses incurred in connection with defective goods that were shipped, but its increased cost to purchase future supplies from other sources. It also claimed consequential damages, both for lost profits on the confirmed GSA contracts and lost future GSA contracts.
 
 
 6
 On Banner Fibreboard's motion for partial summary judgment, the district court ruled in favor of Banner on four issues; all other matters involved disputed issues of fact which precluded summary judgment. The court ruled that there was no dispute about the fact that Clinton Paper failed to pay the agreed upon price for the file folder stock that had been shipped to Clinton Paper. Accordingly, the court ruled that Banner Fibreboard was entitled to the purchase price of $90,647 plus interest, subject to any setoffs that might be proved in Clinton Paper's counterclaim. The court also ruled that Clinton Paper was not entitled to receive $107,413 on its counterclaim which represented its higher cost of purchasing file folder stock after November 11, 1988, when Banner Fibreboard agreed that it was no longer able to supply the stock. In support of its ruling, the court concluded as a matter of law that the 1988 telegraphic letter did not amount to an enforceable requirements contract because the arrangement did not mutually obligate Clinton Paper to buy all its needs for file folder stock from Banner Fibreboard. In the absence of mutuality, the court found, Banner Fibreboard could not be held liable for refusing to sell to Clinton Paper after the termination of the arrangement on November 11, 1988. See Maintenance Engineers v. United States, 749 F.2d 724, 726 (Fed. Cir. 1984) (A requirements contract exists when "the purchaser agrees to buy all of its needs for specified goods or services from a particular supplier, and the supplier agrees to fill all of such needs during the period of the contract."); cf. Barber & Ross Co. v. Lifetime Doors, Inc., 810 F.2d 1276, 1277 (4th Cir.), cert. denied, 484 U.S. 823 (1987). Finally, the district court ruled that Clinton could not recover any consequential damages because Clinton had not presented evidence which would allow calculation of consequential damages to a reasonable certainty, as required by West Virginia law. See Smithson v. United States Fidelity & Guaranty Co., 411 S.E.2d 850, 861-62 (W.Va. 1991).[1] While Clinton Paper made an untimely effort to introduce more evidence into the record, principally on the issue of consequential damages, the district court concluded that the latefiled matter would not cause it to change its rulings on the matters resolved.
 
 
 7
 All other issues presented by the summary judgment motion were left open for trial. Rather than try the case, however, the parties reached a settlement for the entry of a final consent judgment, preserving for appeal only the issues on which summary judgment was granted to Banner Fibreboard. On appeal from the consent judgment, therefore, we are presented only with the issues relating to the courtresolved matters.
 
 
 8
 Turning to the first question, we can find no factual dispute about the contract price. Clinton Paper only makes claims for setoffs for defective materials, and those were preserved for trial. We therefore can perceive no error in connection with the court's first ruling.
 
 
 9
 Likewise, the district court's legal determination that the 1988 telegraphic letter did not constitute a requirements contract is unassailable. Clinton Paper agrees that it did not have an obligation to purchase all its needs for file folder stock from Banner Fibreboard, and therefore there was no mutuality of obligation. It is well settled that in the absence of mutuality, the 1988 telegraphic letter can be construed to have a binding force no greater than a quotation of price. In this case individual contracts were formed only as each purchase order was placed and agreed to or filled.
 
 
 10
 Finally, we find no error in the district court's rulings on consequential damages.
 
 
 11
 Finding no error with any of the court's rulings, we affirm them, leaving to the agreement of the parties, as reflected in the consent judgment of May 15, 1992, the implications on other issues in the case.[2]
 
 AFFIRMED
 
 
 [1]
 The district court also granted summary judgment for Banner Fibreboard on consequential damages attributed to future GSA contracts because these damages were not foreseeable. The court denied summary judgment on foreseeability grounds as to GSA contracts then in existence. The district court ruling on consequential damages on certainty grounds subsumed this ruling
 
 
 [2]
 Clinton Paper also challenged the district court's refusal to open the record relied on to make its rulings. We need not, however, determine whether the court abused its discretion in that regard, because it ruled alternatively by considering Clinton Paper's late-filed matters. We agree with the district court that the supplemental matters filed do not change the outcome on the matters resolved by the district court